UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE TRAVELERS INDEMNITY
COMPANY,

       Plaintiff,

  -against-

HUDSON EXCESS INSURANCE
COMPANY,

24-cv-7582 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

    Plaintiff The Travelers Indemnity Company ("Travelers") filed
suit seeking a declaratory judgment that defendant Hudson Excess
Insurance Company ("Hudson") is obligated to defend and indemnify
parties in an underlying action in New York State Supreme Court arising
from injuries that employees Henry Melendez and Jose David Artiga
Lopez allegedly sustained while working at a construction site.
Travelers has now moved for partial summary judgment and Hudson has
moved for summary judgment. For the reasons stated below, the Court's
grants Travelers's motion and denies Hudson's motion.

    I.   Background

        A. The Insurance Policies

    The following facts are undisputed. In June 2016, 21 West 86 LLC
("West"), the owner of a building located at 21 West 86th Street in
Manhattan (the "Property") hired Masterpiece US Inc. ("Masterpiece")
to serve as a contractor on a construction project. Pursuant to a
purchase order, Masterpiece then hired Vici Interni Inc. ("Vici") as

a subcontractor to perform demolition work. Specifically, Masterpiece hired Vici to demolish floors and walls, as well as to install a new ramp and concrete floors.

Three documents govern the relationship between West, Masterpiece, and Vici, as well their respective insurers, Travelers (which insures Masterpiece) and Hudson (which insures Vici). The first document is the Travelers insurance policy, which Travelers issued to Masterpiece before the construction project began. Two provisions of the Travelers insurance policy are relevant here. The first provision, which is titled "OTHER INSURANCE CONDITION AND MEANING OF OTHER INSURANCE, OTHER INSURER AND INSURER -- NEW YORK" ("Other Insurance Provision") specifies that the Travelers insurance policy "is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to [Masterpiece] when [Masterpiece] is added as an additional insured under any other policy, including any umbrella or excess policy." ECF No. 17, Exhibit A ("Travelers Policy"), at CG F5 61 02 09. The second provision, which is titled "BLANKET ADDITIONAL INSURED (CONTRACTORS) -- NEW YORK" ("Blanket Additional Insured Provision") similarly states that "[a]ny coverage provided . . . to an additional insured shall be in excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis." Id. at CG F2 76 06 03.

The second document is the purchase order, which dictates the terms of the agreement between Masterpiece (as the contractor) and

Vici (as the subcontractor), and outlines Vici's insurance and workplace safety obligations in connection with Vici's demolition work at the Property. As to Vici's insurance obligations, the purchase order states that Vici is required to "purchase and maintain . . . commercial general liability (CGL) coverage," that West and Masterpiece are required to "be included as insureds on the CGL," and that "[c]overage for the additional insureds shall apply as primary and noncontributing insurance before any other insurance or self-insurance." ECF No. 17, Exhibit D ("Purchase Order"), at ¶ 16(a)(3). As to Vici's workplace safety obligations, the purchase order states that "[Vici] at it's [sic] sole cost, shall strictly observe and comply with any and all applicable safety laws, codes, ordinances, citations, rules and regulations now existing or subsequently enacted." Id. at ¶ 15. The purchase order further states that "[Vici] shall comply with any additional safety requirements deemed necessary by the General Contractor." Id.

The third and final document is the Hudson insurance policy, which Hudson issued to Vici in connection with the construction project. As with the Travelers insurance policy that Travelers issued to Masterpiece, two provisions of the Hudson insurance policy are relevant here. The first provision, which is titled "ADDITIONAL INSURED -- OWNERS, LESSEES OR CONTRACTORS -- AUTOMATIC STATUS FOR OTHER PARTIES WHEN REQUIRED IN WRITTEN CONSTRUCTION AGREEMENT" ("Additional Insured Provision") outlines insurance obligations to "additional insured" parties as follows:

A. Section II — Who Is An Insured is amended to include as additional insured:

1. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and

2. Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1. above.

Such person(s) or organization(s) is an additional insured only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused, in whole or in part, by:

      a. Your acts or omissions; or

      b. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

ECF No. 17, Exhibit B ("Hudson Policy"), at CG 20 38 04 13. The second provision, which is entitled "PRIMARY AND NON-CONTRIBUTING INSURANCE WHERE REQUIRED BY WRITTEN CONTRACT(S) ENDORSEMENT" ("Primary and Non-Contributing Endorsement") states:

Where you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any 'occurrence' or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

Id. at HXMG 138 04 15.

B. The Underlying Action

With these documents in place, Vici began work at the Property. Shortly thereafter, two Vici employees, Henry Melendez and Jose David

Artiga Lopez, allegedly sustained injuries there. According to Melendez and Lopez, while they were demolishing a wall, the floor beneath them gave way and they were struck by falling objects. As a result, they suffered bone fractures and various other physical and psychological injuries.

In November 2016, Melendez and Lopez filed an amended complaint against West and Masterpiece, alleging that their injuries were caused by West's and Masterpiece's failure to provide a safe work environment, in violation of various New York State labor laws. See ECF No. 17, Exhibit E ("Amended Complaint"). Their amended complaint alleges that "[t]he accident was caused by the negligence, carelessness and violations of the Labor Laws of [the] State of New York by West . . . and its agents, servants, employees, and/or licensees including contractors and subcontractors performing work at the subject location at the time of the accident and prior thereto." Id. at ¶ 13. Their amended complaint further alleges that West and Masterpiece failed to "provide [them] with a safe place to work," to "construct, assure, equip, place, guard, arrange and/or maintain the construction/work site and the equipment thereat so as to give proper protection to [them]," to provide [them] proper safety devices," or to "secure the falling object." See, e.g., id. Melendez and Lopez did not name Vici as a defendant in their amended complaint.

In March 2018, Melendez and Lopez filed a bill of particulars, which provided additional details about the alleged accident and their injuries. After repeating the allegations in the complaint, the bill

of particulars stated that West and Masterpiece had failed to provide either a "proper ladder, scaffold, safety equipment and harnesses or ropes to protect workers such as Plaintiffs" or "proper safety equipment to prevent a fall to the ground below." ECF No. 17, Exhibit F ("Bill of Particulars"), at ¶ 6. The bill of particulars further stated that West and Masterpiece had failed to "ensure the structural soundness of the wall Plaintiffs were working on before it collapsed on top of them" or to "provide safety devices which would have prevented the unstable wall from collapsing towards [them]." Id.

In November 2016, Travelers attempted to tender[1] to Hudson on behalf of West and Masterpiece, seeking defense and indemnification under the Hudson insurance policy. However, Travelers's tender correspondence was addressed to Hudson Specialty Insurance Company, not Hudson Excess Insurance Company, the insurance company that had issued Vici's insurance policy. Neither "Hudson" company responded to the tender. In June 2017, Travelers tendered to Hudson Excess Insurance Company. Later that same month, Hudson denied the tender, asserting that the requirements of the Additional Insured Provision were not satisfied because Melendez's and Lopez's injuries were not caused by any acts or omissions on the part of Vici. Six years later, in October 2023, Travelers renewed its tender once again, but Hudson did not

---

[1] In insurance, "tender" refers to a formal demand, made to an insurer by an insured or by a co-insurer, to take over defense of a claim and/or agree to indemnify the insured for potential liability on that claim.

respond. To date, Hudson has not accepted defense or indemnification on behalf of West or Masterpiece.

C. The Present Action

In October 2024, Travelers filed suit against Hudson in this Court, seeking a declaratory judgment establishing that Hudson owes a duty to defend and indemnify West and Masterpiece in the underlying action, that Hudson's coverage obligations are primary, and that Travelers's coverage obligations are excess to Hudson's coverage obligations. Travelers also seeks damages in the amount of all the expenses that Travelers has already paid defending West and Masterpiece in the underlying action.

Both parties have now moved for summary judgment. Travelers has moved for partial judgment, seeking (i) a declaration that Hudson has a duty to defend West and Masterpiece in the underlying action, (ii) a declaration that Hudson's coverage obligations are primary, (iii) a declaration that Travelers's coverage obligations are excess to Hudson's, and (iv) an award for all the expenses that Travelers has already paid defending West and Masterpiece in the underlying action. Travelers does not seek summary judgment on the indemnification issue. Although Hudson has moved for summary judgment on all of Travelers's claims, including Travelers's request for declaratory relief as to Hudson's duty to indemnify, Hudson did not address the indemnification issue in its summary judgment briefing.

II.  Standard

The Court must grant summary judgment if a defendant demonstrates that there is "no genuine dispute as to any material fact," such that the defendant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "A material fact is one that would affect the outcome of the suit under governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party."[2] Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66, 72 (2d Cir. 2022). To successfully oppose summary judgment, a responding party must "present competent evidence that creates a genuine issue of material fact" and not "merely deny the moving party's allegations in a general way." McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022). In reviewing the factual record, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020).

III. Discussion

To resolve the parties' motions for summary judgment, the Court must address three questions, each of which, the parties argue, is governed by New York insurance law. First, the Court must determine whether Hudson has a duty to defend West and Masterpiece. If the Court

---

[2]  Unless otherwise indicated, case quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation marks.

determines that Hudson has such a duty, then the Court must proceed to determine the priority of coverage as between the Hudson insurance policy and the Travelers insurance policy. Finally, the Court must determine whether it is appropriate to resolve the indemnification issue at this time. The Court proceeds to address each issue in turn.

A. Duty to Defend

Under New York law, "the duty of an insurer to defend its insured is exceedingly broad and far more expansive than the duty to indemnify its insured." High Point Design, LLC v. LM Ins. Corp., 911 F.3d 89, 94 (2d Cir. 2018). The duty to defend is "invoked whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." Id. "[I]f any of the claims against the insured arguably arise from covered events," then "the insurer is required to defend the entire action." Id. Moreover, "[e]ven if the underlying complaint does not allege a covered occurrence as defined by the policy, an insurer must defend if it has actual knowledge of facts establishing a reasonable possibility of coverage." Jovani Fashion, Ltd. v. Fed. Ins. Co., 416 F. Supp. 3d 334, 344 (S.D.N.Y. 2019). To that end, courts may consider evidence that is extrinsic to the complaint. See Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co., 462 F. Supp. 3d 317, 324 (S.D.N.Y. 2020). Ultimately, "the insurer may deny its insured a defense only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be

9

obligated to indemnify the insured under any provision of the insurance policy." High Point Design, 911 F.3d at 95.

The Court concludes that Hudson has a duty to defend West and Masterpiece in the underlying action for two alternative reasons. First, pursuant to the purchase order, Vici agreed to add West and Masterpiece as "additional insureds" on its Hudson insurance policy. That policy provides coverage for those "additional insureds" for "bodily injury" that is "caused, in whole or in part," by Vici's "acts or omissions." Hudson Policy, at CG 20 38 04 13. In the underlying case, Melendez and Lopez alleged that they sustained bodily injuries because West, Masterpiece, and their subcontractors, including Vici, failed to abide by state labor laws and to provide a safe work environment. Those allegations reasonably "fall within the scope of the risks undertaken by [Hudson]" in insuring Vici and the "additional insureds" in connection with the construction project. High Point Design, LLC, 911 F.3d at 95. Therefore, because there is a reasonable basis on which Hudson might eventually be required to indemnify West and Masterpiece, Hudson has a duty to defend in the underlying action.

Second, Hudson does not dispute that Vici agreed, pursuant to the purchase order, to "strictly observe and comply with any and all applicable safety laws, codes, ordinances, citations, rules and regulations now existing or subsequently enacted" at its "sole cost." Purchase Order, at ¶ 15. "The duty to defend is triggered when the insured party has safety obligations at the injury site." Travelers Indemnity Co. v. Accredited Surety & Casualty Co., No. 21-cv-3412,

2022 WL 16722107, at *6 (S.D.N.Y. Nov. 4, 2022). Vici's safety
obligations under the purchase order thus provide an alternative basis
for determining that Hudson has a duty to defend in the underlying
action.

Hudson nevertheless insists that it does not have a duty to defend
because Vici is not named in the underlying complaint. However, "[t]he
New York courts long ago rejected that the complaint allegations are
the sole criteria for measuring the scope of that duty because
the duty to defend derives, in the first instance, not from the
complaint drafted by a third party, but rather from the insurer's own
contract with the insured." Zurich Am. Ins. Co. v. XL Ins. Am., Inc.,
547 F. Supp. 3d 381, 399 (S.D.N.Y. 2021). Put differently, "[a]n
insured's right to a defense does not depend solely on the allegations
a third party chooses to put in the complaint or the parties it
names." Id. After all, "[t]he drafter of the pleading may be unaware
of the true underlying facts or nuances that may affect the defendant's
coverage and it might not be in the insured's (or insurer's) interest
to reveal them." Id. Accordingly, courts "frequently extend
the duty to defend to cases where the insured is not named in the
underlying action as a party defendant." Id.; see also City of New
York v. Wausau Underwriters Ins. Co., 45 N.Y. 3d 3, 7 (1st Dep't 2016)
("It is of no moment that . . . the named insured . . . was not named
in the complaint.").

In any event, despite Hudson's argument to the contrary, Vici is,
in fact, referenced in the underlying complaint. As noted above, the

underlying complaint alleges that "[t]he accident was caused by the negligence, carelessness and violations of the Labor Laws of [the] State of New York by [West] . . . [and] its agents, servants, employees, and/or licensees including contractors and <u>subcontractors</u> performing work at the subject location at the time of the accident and prior thereto." Amended Complaint, at ¶ 13 (emphasis added). Although this allegation does not refer to Vici by name, the parties do not dispute that Vici qualifies as a "subcontractor" that was "performing work at the subject location" when Melendez and Lopez allegedly sustained their injuries.

At oral argument, counsel for Hudson addressed the reference to "subcontractors" in the underlying complaint by directing the Court's attention to <u>Stamford Wallpaper Co. v. TIG Ins.</u>, 138 F.3d 75 (2d Cir. 1998). According to counsel for Hudson, in <u>Stamford Wallpaper Co.</u>, "[the Second Circuit] said that in the duty to defend realm, generic references to subcontractors absent proper noun identification is too vague and conclusory to create a reasonable possibility of coverage." Oral Argument Transcript ("Transcript") 10:15-18. At the outset, the Court observes that the Second Circuit applied Connecticut law, rather than New York law, in resolving that case. More to the point, the Second Circuit did not hold that generic references to subcontractors cannot create a reasonable possibility of coverage. Instead, <u>Stamford Wallpaper Co.</u> stands for the basic proposition that courts "will not hypothesize or imagine episodes or events that need cannot be found among the [underlying] allegations, and cannot reasonably be deduced

from them." Id. at 81. Given the explicit reference to "subcontractors" in the underlying complaint, the Court need not hypothesize or imagine any such episodes or events. The Court therefore rejects Hudson's argument and concludes that Hudson has a duty to defend West and Masterpiece in the underlying action.

B. Priority of Coverage

Having determined that Hudson has a duty to defend, the Court proceeds to determine the priority of coverage as between the Hudson insurance policy and the Travelers insurance policy. Specifically, the Court considers whether Hudson's coverage obligations to West and Masterpiece are primary and noncontributory, as well as whether Travelers's coverage obligations to West and Masterpiece are in excess to Hudson's.

"When two insurance policies both cover the same liability, the priority of coverage determines which insurer must pay." Liberty Mutual Ins. Corp. v. N.Y. Marine & Gen. Ins. Co., 505 F. Supp. 3d 260, 276 (S.D.N.Y. 2020). "The primary insurance must pay out first and excess insurance need only be paid out when the primary insurance has been exhausted up to the policy limit." Id. "Where one insurance policy is primary and one insurance policy is excess, the primary insurer has the primary duty to defend on behalf of its insureds and it generally has no entitlement to contribution of an excess insurer." Id. Under New York law, courts determine the priority of coverage as a matter of law by comparing the "other insurance clauses" of competing policies. See Charter Oak Fire Ins. Co., 462 F. Supp. 3d at 327.

After reviewing the language of the purchase order and Hudson's insurance policy, the Court concludes that Hudson's coverage obligations are primary and noncontributory. The purchase order, which dictates the terms of the agreement between Masterpiece and Vici, states that Vici is required to "purchase and maintain . . . commercial general liability (CGL)" coverage, that West and Masterpiece are required to "be included as insureds on the CGL," and that the "[c]overage for the additional insureds shall apply as primary and noncontributing insurance before any other insurance or self-insurance." Purchase Order, at ¶ 16(a)(3) (emphasis added). Consistent with the purchase order, the Hudson insurance policy then provides that where, as here, Vici is "specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any 'occurrence' or offense," then "this insurance will be primary and the other insurance will not contribute with this insurance." Hudson Policy, at HSMG 138 04 15 (emphasis added). These provisions thus make clear that Hudson's coverage obligations are primary and non-contributory.

The language of Travelers's insurance policy makes equally clear that it is in excess of the Hudson insurance policy. As noted above, the Other Insurance Provision provides that the Travelers insurance policy applies "in excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to [Masterpiece] when [Masterpiece] is added as an additional insured

under any other policy, including any umbrella or excess policy." Travelers Policy, at CG F5 61 02 09 (emphasis added). Similarly, the Blanket Additional Insured Provision states that "[a]ny coverage provided . . . to an additional insured shall be in excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis." Id. at CG F2 76 06 03. The Hudson insurance policy plainly qualifies as "any . . . other insurance" for purposes of the Other Insurance Provision or "any other valid and collectible insurance" for purposes of the Blanket Additional Insured Provision. Accordingly, the Court concludes that the Travelers insurance policy is in excess of the Hudson insurance policy.

Hudson does not contest that its policy is primary or that Travelers's policy is excess. Instead, Hudson insists that the Court need not consider the priority of coverage because it has no duty to defend West and Masterpiece in the underlying suit. However, as discussed above, Hudson does, in fact, have a duty to defend West and Masterpiece in that action. Under these circumstances, the Court does not hesitate to conclude that Hudson's policy is primary, and that Travelers's policy is excess.

IV.  Duty to Indemnify

All that remains is the indemnification issue. "Courts often distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory judgment action is ripe for adjudication." Atlantic Cas. Ins. Co. v. Value

15

Waterproofing, Inc., 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013). "This
distinction arises from the fact that the duty to defend is triggered
by the filing of a lawsuit while the duty to indemnify is triggered
by a determination of liability." Id. "Central to the reasoning of
courts that distinguish between the justiciability of the duty to
defend and the duty to indemnify are the different degrees of factual
investigation that the two inquiries entail." Id. As evident from the
analysis above, "the duty to defend is often decided on the basis of
the four corners of the underlying complaint and the terms of the
insurance policy," while the duty to indemnify "is contingent on the
insured's liability," which "often requires consideration of the
factual disputes that are also at issue in the underlying action." Id.
"Accordingly, courts may issue a declaratory judgment on the duty to
defend, while holding that the duty to indemnify is not ripe for
adjudication." Id.

     The Court concludes that the indemnification issue is not ripe
for adjudication. As of April 2025, the parties in the underlying
action were briefing Melendez's and Lopez's motion for summary
judgment, which will determine Masterpiece's and West's liability in
that action and inform the Court's determination as to Hudson's
liability in this action. See Transcript at 3:3-7. To date, that
summary judgment motion remains pending. Courts may decline to exercise
their jurisdiction to issue declaratory relief where "considerations
of practicality and wise judicial administration" counsel against
doing so. Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85,

16

100 (2d Cir. 2023). Here, based on the "undetermined status" of West's and Masterpiece's liability at this time, id., those considerations counsel in favor of denying Hudson's motion for summary judgment as to the indemnification issue.

V.    Conclusion

For the foregoing reasons, the Court grants Travelers's motion for partial summary judgment and denies Hudson's motion for summary judgment. The parties are instructed to call chambers no later than June 17, 2025 to set a briefing and oral argument schedule on the amount of legal fees to which Travelers is entitled, and to discuss the potential scheduling of the indemnification issue.

SO ORDERED.

New York, NY
6/10/ 2025

JED S. RAKOFF, U.S.D.J.