UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

+-------------------------------------------+
| THE TRAVELERS INDEMNITY COMPANY,          |
|                                           |
|            Plaintiff,                     |
|                                           |
|      -v-                                  |
|                                           |
| HUDSON EXCESS INSURANCE COMPANY,          |
|                                           |
|            Defendant.                     |
+-------------------------------------------+

24-cv-7582 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

On June 10, 2025, the Court granted partial summary judgment in favor of the plaintiff, The Travelers Indemnity Company ("Travelers"), in this insurance dispute. See ECF No. 32. Travelers then moved for entry of a monetary judgment, see ECF No. 33-1, and the defendant, Hudson Excess Insurance Company ("Hudson"), opposed that motion, see ECF No. 35-27. For the reasons stated below, the Court grants Travelers's motion.

I.   Background

The Court presumes the parties' familiarity with the facts underlying this dispute. Relevant to this motion for money judgment, however, is that the Court earlier granted Travelers's motion for partial summary judgment. See ECF No. 32. That motion for summary judgment dealt with Travelers's suit seeking a declaratory judgment that Hudson was obligated to defend and indemnify parties in an underlying action in New York State Supreme

1

Court arising from injuries that two employees allegedly sustained while working at a construction site. Id. at 1.

The Court concluded in its decision that Hudson had a duty to defend two companies – 21 West 86 LLC ("21 West") and Masterpiece US Inc. ("Masterpiece") -- in the underlying action, that Hudson's coverage obligations were primary to Travelers's obligations, that Travelers's coverage obligations were excess to Hudson's, and that the Court would award Travelers for expenses incurred in defending 21 West and Masterpiece in the underlying action. Id.

## II.  Legal Standard

"Where an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable."[1] See Olin Corp. v. Ins. Co. of N. Am., 218 F. Supp. 3d 212, 288 (S.D.N.Y. 2016) (citing Danaher Corp. v. Travelers Indem. Co., 2015 WL 409525, at *7 (S.D.N.Y. Jan. 16, 2015)).

## III.  Discussion

Travelers requests a total of $413,800.57 for costs incurred in defending the parties in the underlying action: $272,716.58 in defense costs incurred on behalf of Masterpiece, and $73,614.67 in defense costs incurred on behalf of 21 West. In addition, Travelers

---

[1] Unless otherwise indicated, case quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation marks.

requests both prejudgment and post-judgment interest, with prejudgment interest accruing from the date in which each portion of the damages was incurred. Travelers also requests leave for subsequent inquests in order to secure judgment against Hudson for any defense costs that Travelers continues to incur.

In opposing Travelers's motion, Hudson advances six arguments. First, Hudson contends that Travelers cannot recover fees incurred before June 29, 2017. Second, it argues that Travelers's invoices include excessive and unreasonable non-material entries, warranting a fifty-percent across-the-board reduction. Third, Hudson asserts that Travelers's retained law firms billed in violation of Travelers's own billing guidelines. Fourth, it urges the Court to disregard portions of the declaration of Deborah Mason attesting to the $73,614.67 that Travelers claims in defense costs related to 21 West. Fifth, it challenges inconsistencies in Travelers's invoices for deposition attendance. And sixth, Hudson argues that prejudgment interest, instead of accruing from the earliest ascertainable date for each cause of action, should accrue from the midpoint date of those causes of action. The Court rejects each argument in turn.

a. Fees Incurred Before June 29, 2017

Hudson first contends that Travelers should not be reimbursed for any fees incurred prior to June 29, 2017, which is when Hudson denied Travelers's tender on behalf of Masterpiece and 21 West.

For context, on November 22, 2016, the underlying action was filed in the New York State Supreme Court. On November 29, 2016, Travelers attempted what Hudson terms a "botched" tender of defense and indemnity to Masterpiece and 21 West to Hudson.[2] See ECF No. 35-27 at 4. On June 13, 2017, Travelers re-tendered defense, and on June 29, 2017, Hudson denied Travelers's tender. Travelers incurred two bills between November 22, 2016 and June 29, 2017 that Hudson argues it does not need to pay.

Hudson bases its position on what it calls the "axiomatic" rule that an insurer's duty to cover defense costs after disclaiming coverage begins only as of the date it refuses a tender of defense. See ECF No. 35-27 at 4. But that principle is hardly axiomatic. Courts often conclude that insurers are responsible for defense costs from the point at which their duty to defend was triggered, see United Parcel Service v. Lexington Insurance Group, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013), or at least from the date of tender, see Travelers Property Casualty Co. of America v. Hudson Excess Insurance Co., 660 F. Supp. 3d 187, 195 (S.D.N.Y. 2023). Assuming there was a "botched" tender of defense here, Hudson points to no case or law that states that the date of the correct tender is relevant in fee determinations.

---

[2] According to Hudson, Travelers botched the November 29, 2016 tender by (1) identifying the wrong Hudson Insurance Group writing insurer, and (2) incorrectly naming one of the injured claimants. ECF No. 35-27 at 4.

The Court agrees that insurers are responsible for fees incurred from the point at which their duty to defend was triggered, rather than from the date they refused tender. To conclude otherwise would give insurers every incentive to delay their refusal of tender. Accordingly, the Court rejects Hudson's argument, and permits Travelers's claim for reimbursement of fees incurred prior to June 29, 2017.

b. Billing Entries

Hudson also argues that Travelers's invoices warrant a 50% reduction because the requested fees are excessive and duplicative.

The Court disagrees. As noted, when an insurer has breached its duty to defend, the "insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish hat the fees are unreasonable." Olin Corp. v. Insurance Co. of N. Amer., 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016). Though Hudson devotes a large portion of their brief to arguing that the billing fees were "excessive," see ECF 35-27 at 9-15, Hudson does not cite to a single entry within this section of their brief to explain which of Travelers's entries are improper. Instead, Hudson argues that it has "scrutinize[d] each and every line item on one hundred and twenty-nine invoices," id. at 12, and in a much later section of the brief, notes several entries that it considers excessive or duplicative, id. at 19-21.

Even if the Court assumes that those later-mentioned billing entries are intended to refer to the earlier section of the brief, none of the entries mentioned clearly support Hudson's contention. For instance, Hudson notes that "Invoice 8481887 shows BMM Attorney Stephens billed 9.2 hours to draft an attorney affirmation on a run of the mill discovery motion to compel a further deposition." ECF No. 35-27 at 20. But the billing entry specifically notes that the motion was "19 pages" and that the attorney reviewed "over 4,000 pages" in anticipation of drafting the attorney affirmation. ECF No. 34-3 at 57. Hudson's blanket assertion that 9.2 hours to draft this affirmation in a "run of the mill" motion is beside the point and misstates the significant detail and work mentioned in the billing entries.

Another example underscores the same point: Hudson argues that "Invoice 4052967 shows that BMM attorneys billed excessively to create a 'medical appendix' in multiple entries of a purely clerical task or at most a paralegal task." ECF No. 35-27 at 20. A closer look at those entries demonstrate that attorneys were outlining reports and recommendations from various doctors, which would be directly relevant to the underlying dispute in this case and might well require an attorney's specialized skills. ECF No. 34-3 at 195. The other examples that Hudson lists involve similar situations.

Hudson's argument thus fails to overcome the presumption of reasonableness. Accordingly, the Court rejects Hudson's contention that the bills were excessive and declines its invitation to deduct 50% from Travelers's invoices.

c. Law Firms

Hudson also argues that Travelers retained law firms that violated Travelers's billing guidelines. See ECF No. 35-27 at 11. Travelers's billing guidelines, as relevant here, explain that "[o]nly one (1) partner, one (1) associate[,] and one (1) paralegal should work on a matter, unless otherwise authorized in advance by the Travelers Representative." Id. at 12. Travelers's guidelines also state that it "will not pay unreasonable fees," and "will not pay any fees for" various forms of work, ranging from administrative or clerical work, to duplication of work caused by a firm's staffing decisions, to research without advance approval. Id. at 12–13. Hudson further argues that the law firms engaged in the disfavored block billing practice and overstaffed their matters.

Beginning with block billing: Though block billing is disfavored, that does not mean that the Court rejects block bills wholesale. Specifically, block billing is disfavored when the practice prevents a Court from accurately breaking the fee application into the individual tasks of which it is comprised. See Ass'n of Holocaust Victims for Restitution of Artwork &

Masterpieces v. Bank Austria Creditanstalt AG, 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17, 2005). Here, however, the bills are reasonably broken out to provide the Court with enough information to conclude that the hours charged are reasonable for the tasks listed. See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., 2011 WL 1002439, at *8 (S.D.N.Y. 2011) (accepting block bills because the time entries nevertheless indicated what specific tasks were being performed). Hudson fails to direct the Court to any specific entry that fails to adequately list the tasks performed. And, in many entries, the block billed time is readily broken down into the tasks performed by attorneys. For example, entry number 9197788, which Hudson suggests contains "vague, block billed entries," ECF No. 35-27 at 19, explicitly lays out the several tasks accomplished in each billing entry, ECF No. 34-3 at 40-42. Accordingly, Travelers's time entries do not warrant a reduction in fees.

Additionally, though Hudson directs the Court to several entries that it indicates either violated Travelers's billing policies, are excessive, or are overstaffed, the Court disagrees. For instance, one invoice indicates that two attorneys billed time to review the same deposition transcript. See ECF No. 35-27 at 15. That is not forbidden, nor is it clearly duplicative: multiple attorneys often review the same material for various, reasonable purposes. In another example from Hudson's brief, the fact that an attorney billed 7.4 hours to prepare for a deposition that

ultimately only lasted an hour and a half, id., is plausible and not clearly excessive. As practicing attorneys understand, the time necessary to adequately prepare for a proceeding can exceed the length of the proceeding itself.

Hudson also argues that Travelers failed to meet its initial burden of showing the hourly rates charged by the insurance defense firm Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser") "are in fact in line with those prevailing in the community." Nat'l Helicopter Corp. of Amer. v. City of New York, 1999 WL 562031, at *6 (S.D.N.Y. July 30, 1999). The Court rejects this contention because 21 West had the right to choose its counsel and its liability insurer selected Wilson Elser. In other words, Travelers did not choose Wilson Elser; 21 West did. See Murphy v. Commonwealth Land Title Ins. Co., 621 F. Supp. 3d 373, 378 (E.D.N.Y. 2022) (permitting each policyholder to choose separate counsel in the event of a conflict of interest). And in any event, the fees charged by Wilson Elser are in line with the prevailing market rate in the community. See ECF No. 39-4, p.2; see also LM Ins. Corp. v. Safety Nat'l Cas. Corp., 771 F. Supp. 3d 190, 203 (E.D.N.Y. 2025) (finding hourly rate ranges from $300 to $450 per hour for partners, $200 to $325 per hour for associates, and $75 to $150 per hour for paralegals are presumptively reasonable amounts).

    d. Declaration of Deborah Mason

In connection with its request for $73,614.67 in reimbursement for defense costs on behalf of 21 West, Travelers attached a declaration from Deborah Mason. Mason is a Claim Professional for Travelers, see ECF No. 34-6 ("Mason Declaration") ¶ 1, and handled Travelers's claim for the defense of 21 West in the underlying action. Id. ¶ 5.

Hudson initially argued that the Court should disregard Mason's declaration because Travelers did not identify Mason in response to Hudson's interrogatories as a witness with factual knowledge of the allegations plead in Travelers's complaint. See ECF No. 35-27 at 2. In Hudson's view, Mason amounted to a "surprise witness," in violation of Federal Rule of Civil Procedure 37, that it had no chance to depose before the instant motion for judgment. Id. at 3.

Following the initial briefing in this case, the Court, in an excess of caution, permitted Hudson to depose Mason. See ECF No. 38. After that deposition was taken, Hudson filed another brief, this time arguing that the Court should disregard portions of Mason's declaration. See ECF No. 39. Specifically, Hudson argued that the deposition revealed that (1) Mason lacked personal knowledge regarding the hourly rate of the Wilson Elser firm, and (2) Mason did not audit the Wilson Elser bills herself. Hudson therefore contended that the Court should reject Travelers's

request for $72,846.67 in legal fees incurred in its defense of 21 West.

The Court rejects Hudson's argument. Mason's affidavit stated only that "Wilson Elser's hourly rates were customary and consistent with other counsel," retained by Travelers in similar negligence cases, not that she had personal knowledge of Wilson Elser's billing practices. Wilson Elser, as a Travelers-approved panel firm selected by 21 West, had an agreement with Travelers regarding its hourly rates and billing guidelines. Thus, as Mason confirmed during her deposition, she understood that Wilson Elser's hourly rates were customary and consistent with other counsel of their background and experience retained by Travelers in similar cases because the firm was a panel firm already approved by Travelers. ECF No. 39-2 at 22.

Further, Mason's affidavit stated that "[a]ll of Wilson Elser's billing statements in connection with the Underlying Action were reviewed and audited in accordance with Travelers'[s] established policies." See ECF No. 33-6 ¶ 6. Mason never suggested that she audited the bills herself. And throughout her deposition, Mason confirmed that Wilson Elser's billing statements went "through a billing system that is audited and paid" in accordance with Travelers's policies and that, to the best of her knowledge, "the audits were done." See ECF No. 39-2 at pp. 22-24.

Accordingly, Mason's deposition did not contradict her sworn affidavit, and the Court declines to reject Travelers's request for $72,864.67 in legal incurred in its defense of 21 West.

e. Inconsistencies in Deposition Attendance

Hudson also suggests that attorneys from Travelers billed more time for depositions than the depositions lasted. However, that is not necessarily an error, or an indication of overbilling. As Travelers points out, the court reporter's timeclock or courthouse hours of operation are not "representative or determinative of the actual time an attorney spends at a deposition or in a court conference." ECF No. 37 at 4. For example, attorneys may have shown up on time, but the deposition may not have commenced until all the parties were present and the court reporter was ready to begin. See ECF No. 37 at 4. Several other explanations abound. But Hudson has not produced any documentation that supports their allegation that the depositions billing entries were false or overbilled. As such, this argument fails to overcome the presumption of reasonableness to which Travelers is entitled.

f. Prejudgment Interest

N.Y. C.P.L.R. § 5001 requires an award of prejudgment interest on defense costs incurred when the prevailing party receives an award due to a breach of performance of a contract. The Court can choose whether to calculate prejudgment interest from the date when each portion of damages was incurred or from a single

reasonable intermediate date which can be used to simplify calculations. N.Y. C.P.L.R. § 5001(b).

Travelers requests interest to accrue from the date of each defense cost incurred. Hudson, on the other hand, requests that interest begin accruing from a single midpoint date. Hudson, however, does not provide a reason for the use of a single midpoint date besides the presumption that the Court will reduce Travelers's requested bills. Thus, because the Court is not reducing Travelers's requests, this argument is rejected. Prejudgment interest will accrue from the date of each bill.

IV. Conclusion

For the foregoing reasons, the Court grants Travelers's motion for money judgment in its entirety. Travelers should draft a proposed judgment setting forth the full amounts (including interest) contemplated by this decision and submit it to the Court (with a copy to Hudson) by no later than December 1, 2025.

SO ORDERED.

Dated:     New York, NY
           November 20, 2025                    _____
                                                JED S. RAKOFF, U.S.D.J.